IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH - CENTRAL DIVISION

| | |
|---|---|
| STATE OF UTAH and EMERY COUNTY,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA, DEPARTMENT OF THE INTERIOR, BUREAU OF LAND MANAGEMENT,<br><br>Defendants, and<br><br>SOUTHERN UTAH WILDERNESS ALLIANCE, THE WILDERNESS SOCIETY, SIERRA CLUB,<br><br>Proposed Intervenors-Defendants. | **MEMORANDUM OPINION AND ORDER**<br><br>Case No. 2:05-CV-540<br><br>Judge Dee Benson |

This case asks whether environmental groups are entitled as a matter of right to intervene in a Quiet Title Action ("QTA") involving land for which they hold no title. Three years ago, with the approval of all the parties, this case was stayed pending a decision by the Tenth Circuit Court of Appeals in *San Juan County, Utah v. United States*, 503 F.3d 1163 (10th Cir. 2007), in which a similar question was raised. The Tenth Circuit has now spoken, and the matter is still in many respects unclear.

## I. FACTUAL BACKGROUND

In 1866, Congress authorized rights-of-way for the construction of highways over public lands not reserved for public uses. Act of July 26, 1866, ch. 262, § 8, 14 Stat. 251, 253, *later codified as* Revised Statute 2477, and 43 U.S.C. § 932, *repealed by* Federal Land Policy Management Act of 1976, Pub. L. No. 94-579 § 706(a), 90 Stat. 2743. This statute, commonly

referred to as R.S. 2477, required no administrative formalities to establish a right-of-way through public land. It "was a standing offer of a free right of way over the public domain," *Lindsay Land & Live Stock Co. v. Churnos*, 285 P. 646, 648 (Utah 1929) (quotations omitted), to be determined by the laws of the various states.

In Utah, "[a] highway is dedicated and abandoned to the use of the public when it has been continuously used as a public thoroughfare for a period of ten years." Utah Code Ann. § 72-5-104 (prior law in accord). A public highway may also be accepted through its designation as a public highway by an official act, or by the expenditure of public funds for the maintenance, construction and/or improvement of the road as a public highway or thoroughfare. Utah Code Ann. § 72-3-103 (prior law in accord).

In 1976, Congress enacted the Federal Land Policy and Management Act ("FLPMA"), which repealed R.S. 2477. In enacting FLPMA, however, Congress expressly preserved all valid existing R.S. 2477 rights-of-way. FLPMA § 701(a) provides: "Nothing in this Act, or in any amendment made by this Act, shall be construed as terminating any valid lease, permit, patent, right-of-way, or other land use right or authorization existing on the date of approval of this Act."

This meant that all roads perfected prior to 1976 on federal public lands would remain open to the public and to the municipalities that created and maintained them. But establishing which roads were R.S. 2477 rights-of-way prior to 1976 has not been easy.

As already stated, the establishment of R.S. 2477 rights-of-way required no formal documentation. Rather, they vested through continuous use and maintenance. Consequently, with virtually no official records or documents to prove their creation, extensive litigation has

ensued between the State of Utah and the federal government over who owns title to numerous country roads located on federal land throughout the state.

At issue in the present case are seven roads located in Emery County on federal land administered by the United States Bureau of Land Management ("BLM"). The State of Utah and Emery County have taken the position that these roads constitute R.S. 2477 rights-of-way, giving them the authority to use and maintain these roads without the consent of the federal government. The federal government disputes this, and has taken measures to prevent the maintenance and vehicular use of these roads by the County and the public. In an effort to resolve title as to these seven roads, the State of Utah and Emery County filed the present QTA against the United States pursuant to 28 U.S.C. § 2409a.

The Southern Utah Wilderness Alliance, The Wilderness Society, and The Sierra Club (collectively, "SUWA"), are non-profit organizations dedicated to preserving America's wilderness. Over the past decade SUWA has engaged in numerous activities, including litigation, in an effort to get the BLM to administer federal lands throughout the State of Utah in the manner SUWA believes is required. With regard to Emery County and the roads at issue in this case, in 1999 SUWA sued the BLM to complete a travel plan for the region which would limit the use of motorized vehicles on federal lands. *See S. Utah Wilderness Alliance v. Norton*, 301 F.3d 1217 (10th Cir. 2002) *rev'd and remanded*, 542 U.S. 55 (2004). SUWA then worked with the BLM in creating and implementing a travel plan with the intent of protecting these wilderness areas from future motorized vehicle travel. The result of this effort, SUWA claims, was the closing by the federal government of some of the roads at issue. SUWA Memo in Support, p. 15, Dkt. No. 37.

SUWA argues that should the State of Utah prevail in its QTA against the United States, SUWA's decade long effort to protect the ecological values of BLM land in Emery County will be significantly reversed. This is because, SUWA claims, the single and most urgent threat to wilderness and other natural values on BLM land is the use of motorized vehicles, *id*. at 8, and the State of Utah, in seeking to obtain title to these seven roads, undoubtedly intends to open them to vehicular traffic.[1] Accordingly, SUWA contends that because of its active role for many years in striving to protect the BLM land at issue by restricting vehicular access to the areas burdened by the alleged R.S. 2477 rights-of-way, it has a legally protectable interest in the land, and thus should be allowed to intervene in this QTA. *Id*. at 15.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 24(a)(2) provides that an applicant for intervention shall be permitted to intervene as a matter of right when the applicant "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." By these terms, an applicant must satisfy each of the following four elements in order to carry its burden under the rule:

> (1) the application is "timely"; (2) "the applicant claims an interest relating to the property or transaction which is the subject of the action"; (3) the applicant's interest "may as a practical matter" be "impair[ed] or impede[d]"; and (4) "the applicant's interest is [not] adequately represented by existing parties."

---

[1]"The scope of the R.S. 2477 right-of-way is 'not ... restricted to the actual beaten path,' but includes the right to widen the road to meet exigencies of increased travel even after 1976, 'at least to the extent of a two-lane road' to allow travelers to pass each other." Complaint, ¶ 19, Dkt. No. 1 (quoting *Sierra Club v. Hodel*, 848 F.2d 1068, 1083 (Utah 1988) (quotations omitted)).

*Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Dep't of the Interior*, 100 F.3d 837, 840 (10th Cir. 1996) [hereinafter *Coalition of Counties*] (quoting a prior version of Fed. R. Civ. P. 24(a)(2)).[2]

In addition, an applicant may be allowed permissive intervention under Federal Rule of Civil Procedure 24(b) if the applicant can show: (1) there a common questions of law or fact; (2) the intervention will not cause undue delay or prejudice; and (3) the application to intervene is timely. *See* Fed. R. Civ. P. 24(b); *see also State of Utah v. Kennecott Corp.*, 801 F. Supp. 553, 572 (D. Utah 1992) (reviewing factors to be considered for permissive intervention).

**III. LEGAL BACKGROUND**

In the recent decision of *San Juan County, Utah v. United States*, 503 F.3d 1163 (10th Cir. 2007), the Tenth Circuit was faced with the same question facing this court: whether SUWA should be allowed to intervene in a QTA between the State of Utah and the United States. Initially, the three-judge panel held in favor of allowing intervention. That decision was followed by an *en banc* review of the entire circuit, which held that SUWA would not be allowed to intervene. No majority rationale supported the decision, however, making the exact holding of *San Juan County* unclear.

Although it is a challenge to find precisely what precedential value *San Juan County* has for purposes of this case, the facts of *San Juan County* are similar to the present case and thus bear repeating. San Juan County, Utah, asserted ownership of an alleged R.S. 2477 right-of-way, referred to as "Salt Creek Road," that runs through Salt Creek Canyon in Canyonlands National Park. When the United States disputed San Juan County's alleged ownership of this

[2]The prior version of the rule is substantially similar to the current version.

right-of-way, the County sued the United States to quiet title. SUWA, fearing County ownership of Salt Creek Road would lead to the environmental degradation of Canyonlands National Park, applied to intervene as a defendant on the side of the United States.

As in the present case, SUWA's primary argument in favor of intervention in *San Juan County* was its long history of working to restrict vehicular access to the land at issue. *See id*. at 1199. Throughout the 1990s SUWA pressured the National Park Service ("NPS") to close Salt Creek Road to vehicular traffic. The NPS complied with SUWA's requests by implementing a series of gates and permits to limit vehicular traffic on Salt Creek Road, but stopped short of closing the road completely. *Id*. at 1168. As a result, SUWA filed suit against the NPS arguing that its failure to close Salt Creek Road to vehicular traffic violated the National Park Service Organic Act. *Id*. On June 19, 1998, the district court agreed with SUWA, *S. Utah Wilderness Alliance v. Dabney*, 7 F.Supp.2d 1205, 1211 (D. Utah 1998), and the Salt Creek Road was closed to vehicular traffic.

On August, 15, 2000, the Tenth Circuit reversed the district court, holding that it had used an improper standard of review and remanded the case for further proceedings. *S. Utah Wilderness Alliance v. Dabney*, 222 F.3d 819, 822, 829 (10th Cir. 2000). After the case was remanded and while awaiting review by the district court, "the NPS issued a temporary order closing Salt Creek [Road] . . . to vehicular traffic while it engaged in formal rule-making regarding use of the [Road]." *San Juan County*, 503 F.3d at 1168. In response to this closure, San Juan County – asserting an R.S. 2477 right-of-way – informed Canyonlands officials that if NPS signs and gates near Salt Creek Road were not removed by December 1, 2000, the County

would remove them forcibly. *Id*. When the NPS did not comply with San Juan County's mandate, "County officials removed the NPS signs and drove vehicles into the Canyon." *Id*.

After witnessing San Juan County's aggressive reclamation of Salt Creek Road and the NPS's failure to stop it, SUWA moved to amend its Complaint to name both the State of Utah and San Juan County as defendants, specifically arguing that they were needed to adequately determine what constituted the proper management of resources in Salt Creek Canyon by the NPS. *Id.* SUWA argued that before the NPS could allow use of Salt Creek Road by the State and County, it had an obligation to determine the validity of the alleged right-of-way. *Id*. at 1169. Finding that the State and County were "necessary [parties] for the complete and just adjudication of [the] matter," the district court granted SUWA's motion to amend, and the State and County were added as defendants. *S. Utah Wilderness Alliance v. Nat'l Park Serv.*, No. 2:95-CV-559 (D. Utah Feb. 1, 2001), Dkt. No. 145, Order at 6.

Subsequently, the State and County separately moved for partial summary judgment on the basis that the road was a perfected R.S. 2477 right-of-way. *San Juan County*, 503 F.3d at 1169. The NPS and SUWA opposed the motions by effectively arguing that the existence of an R.S. 2477 right-of-way could only be determined in a suit under the Quiet Title Act and such a suit was not presently before the court. Thus after requesting that the State and County be named as defendants in the action "so that the R.S. 2477 issue could be resolved, the NPS and SUWA [inexplicably] assert[ed] that the court ha[d] no jurisdiction to make such a determination." *Nat'l Park Serv.*, No. 2:95-CV-559 (D. Utah Jan. 15, 2003), Dkt. No. 228, Order at 8. Accordingly, the State and County's motions for partial summary judgment were denied and they were dismissed from the litigation. *Id*. at 10.

Once dismissed, and after the NPS had issued a final ruling prohibiting motor vehicles in Salt Creek Canyon, San Juan County filed a QTA against the United States over Salt Creek Road. *San Juan County*, 503 F.3d at 1170. Against this backdrop, recognizing that the QTA before it was simply an outgrowth of the action originally brought by SUWA to compel the NPS to close Salt Creek Road to vehicular traffic, the Tenth Circuit was faced with the question whether SUWA should be allowed to intervene.

Of the four requirements for intervention as a matter of right, the thirteen *en banc* judges primarily focused on number two, whether the applicant has a legally protectable interest in the property, and number four, whether the applicant's interest is adequately represented by the existing parties. Regarding SUWA's interest in the property, seven of the thirteen judges sitting *en banc*, determined that SUWA's environmental concern over Canyonlands National Park was a "legally protectable interest." *Id*. at 1199. Of these seven, however, only four judges found that SUWA's interest was not adequately represented by the United States and thus would have allowed intervention. *Id*. at 1227-32. The other three judges held that intervention was improper because SUWA's objective was identical to the United States' sole objective – namely, defending exclusive title to Salt Creek Road – and "'when the objective of the applicant for intervention is identical to that of one of the parties,'" representation is presumed to be adequate. *Id*. at 1204 (quoting *City of Stilwell, Okla. v. Ozarks Rural Elec. Coop. Corp.*, 79 F.3d 1038, 1042 (10th Cir. 1996)).

The remaining six judges ruled that SUWA did not have a legally protectable interest in the QTA and denied intervention on this and sovereign immunity grounds. *Id*. at 1207-26. These six judges determined that because SUWA had no protectable interest in the QTA, it was

unnecessary to reach the question of adequate representation. *Id*. at 1210. Therefore, no majority consensus was ever reached on this issue.

In summary, nine out of thirteen judges denied intervention, six on the ground that SUWA did not have a legally protectable interest in the QTA,[3] and three on the ground that although SUWA had a legally protectable interest, the United States adequately represented that interest and thus intervention was inappropriate. The anomaly of *San Juan County*, however, is that while the result of that decision was that SUWA was not allowed to intervene, the only portion of the opinion to attain a majority of seven judges was the court's finding that SUWA's environmental concern over Canyonlands National Park was a "legally protectable interest." *Id*. at 1199. Accordingly, both sides in this case rely on *San Juan County* to support their positions. The State of Utah and the United States, both of whom oppose SUWA's intervention, argue that in a case with virtually identical facts, nine out of thirteen judges denied intervention. To reach a different result in this case, they argue, would fly in the face of Tenth Circuit precedent. Conversely, SUWA contends that the only portion of the opinion to attain a majority – and thus the only portion of the decision to have precedential value – found that SUWA had a protectable interest.

## IV. ANALYSIS

### A. Intervention as a Matter of Right

As stated previously, a party is entitled to intervene as a matter of right when:

> (1) the application is "timely"; (2) "the applicant claims an interest relating to the property or transaction which is the subject of the action"; (3) the applicant's

[3]These six judges also found that intervention was barred by sovereign immunity. *Id*. at 1211.

> interest "may as a practical matter" be "impair[ed] or impede[d]"; and (4) "the applicant's interest is [not] adequately represented by existing parties."

*Coalition of Counties*, 100 F.3d 837, 840 (10th Cir. 1996) (quoting a prior version of Fed. R. Civ. P. 24(a)(2)).[4] As *San Juan County* demonstrates, however, SUWA's application for intervention as of right hinges on two of these prerequisites: (1) whether they can demonstrate a "legally protectable interest" in the property;[5] and (2) whether such an interest is already adequately represented by an existing party.

**1. Legally Protectable Interest**

The Quiet Title Act is a narrowly drawn statute "to adjudicate a disputed title to real property in which the United States claims an interest." 28 U.S.C. § 2409a(a). The State of Utah argues that because SUWA claims no ownership interest in the roads at issue, they lack standing and thus cannot intervene.[6] The State contends that because "[i]ntervenors must take the pleadings in a case as they find them," *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale*

---

[4]The prior version of the rule is substantially similar to the current version.

[5]*See Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1253 (10th Cir. 2001) ("the question of impairment is not separate from the question of existence of an interest") (quoting *Natural Res. Def. Council v. United States Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978)).

[6]

> When the United States consents to be sued, the terms of its waiver of sovereign immunity define the extent of the court's jurisdiction. Because the Quiet Title Act is the exclusive means for challenging the United States' title to real property, if [Plaintiff] cannot state a claim within the terms of the Act's provisions, the federal courts lack jurisdiction over its suit.

*Sw. Four Wheel Drive Ass'n v. Bureau of Land Mgmt.*, 363 F.3d 1069, 1071 (10th Cir. 2004) (quotations omitted).

*Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990) (citations omitted), SUWA should not be allowed – through intervention – to change this QTA into some form of BLM land management case.

But *San Juan County* found, in the only portion of the opinion to attain a majority, that Article III standing is not required for intervention "so long as another party with constitutional standing on the same side as the intervenor remains in the case." *San Juan County*, 503 F.3d 1163, 1172 (10th Cir. 2007) (quoting *San Juan County, Utah v. United States*, 420 F.3d 1197, 1206 (10th Cir. 2005) (panel decision)).[7] Rather, a party must simply demonstrate that they "have an interest that could be adversely affected by the litigation."[8] *Id*. at 1199. Once such an interest has been established, it then becomes the duty of the court to engage in a "highly fact-specific" analysis to determine "whether the strength of the interest and the potential risk of injury to that interest justify intervention." *Id*. at 1199.

In making this determination with regard to SUWA's interest in Salt Creek Road, the Tenth Circuit held that it was "indisputable that SUWA's environmental concern [was] a legally protectable interest" justifying intervention. *Id.* The Tenth Circuit explained that because SUWA was a "determined advocate for restricting vehicular access to Salt Creek Canyon" and the "quiet-title claim may well affect vehicular traffic on the road," "SUWA's interest in the environmental impact of Salt Creek Road vehicular traffic satisfie[d] the conditions of Rule

---

[7]The majority opinion in *San Juan County* also held that sovereign immunity was not a bar to SUWA's intervention, explaining that "the intervention of SUWA would not expose the United States to any burden not inherent in the litigation to which it has consented in the Quiet Title Act." *San Juan County*, 503 F.3d at 1174.

[8]The majority explained that "Rule 24(a)(2) does not speak of 'an interest in the property'; rather, it requires only that the applicant for intervention 'claim[] an interest *relating to* the property or transaction which is the subject of the action.'" *Id*. at 1200 (quoting Fed. R. Civ. P. 24(a)(2) (emphasis added)).

24(a)(2) that it claim 'an interest relating to the property or transaction which is the subject of the action.'" *Id*. at 1199-1201.

It appears, therefore, that the question of whether SUWA has a legally protectable interest sufficient to intervene in the present QTA has already been answered by the Tenth Circuit. As in *San Juan County*, SUWA has made extensive efforts to limit vehicular traffic on federal land in Emery County, and the present QTA may well affect the result of those efforts.[9] As explained above, SUWA filed suit against the BLM in an effort to force them to create a travel plan for the region that would limit vehicular traffic. SUWA then worked with the BLM to create and implement such a travel plan, which SUWA claims lead to some of the road closures at issue in this QTA. In addition, SUWA has consistently submitted comments to the BLM regarding a proposed resource management plan and environmental impact statement for the region, and has worked to educate the public and members of the United States Congress about the need to protect America's wilderness. *See* SUWA's Memo in Support, Dkt. No. 37, at 10. Therefore, the court finds that SUWA has a sufficient interest relating to the property at issue to warrant intervention.

---

[9]Although the court is aware that "[w]hether an applicant has an interest sufficient to warrant intervention as a matter of right is a highly fact-specific determination, making comparison to other cases of limited value," *Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995), and that a good argument can be made that the facts of *San Juan County* provided stronger support for intervention than do the facts of the present case – in that SUWA's efforts in Emery County have been more of a general nature (not targeted at a specific road), involve BLM land rather than a National Park, and the present QTA is not a direct outgrowth of litigation originally brought by SUWA – nonetheless, it cannot be denied that the underlying facts of the two cases are in many respects identical, specifically, that SUWA has fought for decades to protect the federal land at issue from vehicular traffic and the outcome of the present QTA could reverse those efforts.

**2. Adequate Representation**

Even after establishing that it has a legally protectable interest relating to the property at issue, SUWA will not be allowed to intervene in the present QTA unless it can demonstrate that its interests are not adequately represented by the United States. Fed. R. Civ. P. 24(a)(2). Under normal circumstances, a showing of inadequate representation is a minimal burden, satisfied by simply demonstrating that representation of the applicant's interests "may be inadequate." *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972). This is especially true where the government has multiple interests to defend and pursue, and thus may not adequately represent the particular interests of the applicant for intervention. *San Juan County*, 503 F.3d at 1203-04. However, in cases such as the present QTA, where the United States is pursuing a "single litigation objective – namely, defending exclusive title to the road[s]", *id*. at 1206 – there is a presumption of adequate representation that must be overcome by the applicant in order to allow intervention. *Id*. at 1204-06. *See Coalition of Counties*, 100 F.3d 837, 845 (10th Cir. 1996) ("representation is adequate 'when the objective of the applicant for intervention is identical to that of one of the parties.'") (quoting *City of Stilwell, Okl. v. Ozarks Rural Elec. Coop, Corp.*, 79 F.3d 1038, 1042 (10th Cir. 1996)).

SUWA asserts that there are three primary reasons why the United States may not adequately represent its interests, and thus intervention on the part of SUWA should be allowed. First, the long adversarial history between the United States and SUWA concerning vehicle use in Emery County. SUWA's Memo In Support, pp. 20-21, Dkt. No. 37. Second, the BLM "invited plaintiff Emery County to bulldoze one of the routes at issue while this suit was pending," thereby betraying an unwillingness to vigorously defend SUWA's interests. *Id*. at 21.

Third, "as this litigation was pending, BLM staff proposed that the agency consider effectively recognizing the State's alleged R.S. 2477 [rights-of-way's] by issuing an administrative 'non-binding determination' (NBD) under the so called 'Norton policy.'" *Id*. at 22-23 (footnote omitted). The court will address each of these contentions in turn.

**a. Prior Adversarial History**

"An earlier adverse relationship with the government does not automatically make for a present adverse relationship." *Maine v. Director, U.S. Fish & Wildlife Serv.*, 262 F.3d 13, 20 (1st Cir. 2001). As Judge Hartz indicated in *San Juan County*, the determinative factor is not whether the United States and SUWA's interests have been adverse in the past, but rather whether their interests are presently aligned. *San Juan County*, 503 F.3d at 1206. With respect to the current title dispute, the United States has only one objective, and that is to defend its title to the seven roads at issue. SUWA, in filing its application to intervene, could have no other objective than this, and therefore, its interests are identical to that of the United States. *See id*.

SUWA contends, however, that this QTA is not just about title to these seven roads, but is also about the scope of their future use. At oral argument SUWA argued that the Complaint in this case claims rights-of-way much broader than that claimed in *San Juan County*. Specifically, the "right to widen the road[s] to meet the exigencies of increased travel 'at least to the extent of [] two-lane road[s],'" Complaint, ¶ 19, Dkt. No. 1 (quoting *Sierra Club v. Hodel*, 848 F.2d 1068, 1083 (10th Cir. 1988)), and to make improvements "beyond the actual beaten path as are reasonable and necessary to accommodate 'sound engineering practice.'" *Id*. at ¶ 17 (quoting *Hodel*, 848 F.2d at 1084). SUWA argues that its purpose for intervening in this QTA is not only to defend title to these seven roads on behalf of the United States, but is also to ensure that the

State of Utah – should they win title to these seven roads – is not allowed to expand the scope of their uses beyond those proven historically.

But as much as SUWA would like to turn this litigation into a land management case, it is not. It is a QTA over alleged R.S. 2477 rights-of-way. And although any QTA involving an alleged R.S. 2477 right-of-way will necessarily involve the scope of the alleged right-of-way, in that its validity will be dependent upon historical evidence of use and the extent of that use, the sole interest and objective of a QTA is to establish title. The State of Utah will present historical evidence of its use of the roads prior to 1976 to argue that rights-of-way were perfected, while the United States will work to rebut this evidence and argue that the State's alleged uses either did not occur, or were insufficient to constitute the creation of rights-of-way. Therefore, although title to these seven roads will be determined based on historical evidence of use and the scope of that use, this is still a QTA, with the only issue before the court being who owns title.

The United States has displayed "no reluctance . . . to claim full title" to the roads and to vigorously dispute the State of Utah's claims. *San Juan County*, 503 F.3d 1206. "SUWA has given [the court] no reason to believe that the [United States] ha[s] any interest in relinquishing to the [State] any part of the federal title to the road[s]," including relinquishing to the State any easements and the authority of use that goes with them.[10] *Id.* at 1207. In litigating this dispute, the United States has a single objective – the only objective that can be at issue in a QTA and one that is identical to SUWA's – namely, to defend exclusive title to these seven roads. *San Juan County*, 503 F.3d at 1206.

---

[10]"[S]o long as the United States retains title, SUWA can continue with its pursuit of requiring the [United States] to conform to federal environmental laws. This litigation, however, [does] not implicate those laws . . . ." *Id.*

**b. Allowing Maintenance while the Present QTA was Pending**

During the pendency of this litigation, the BLM allowed Emery County to maintain a portion of a county road that abuts and turns into Copper Globe Road, one of the roads at issue in this case. *See* SUWA Memo in Support, Exh. 20, Dkt. No. 37 (containing BLM emails that explain the maintenance on Copper Globe Road by Emery County). SUWA argues that this demonstrates an unwillingness by the United States to vigorously defend SUWA's interests and to defend its exclusive title to the roads at issue. But the evidence offered by SUWA in support of its claim wholly fails to establish any reluctance by the United States to defend its title interests in this action. The BLM emails upon which SUWA relies merely indicate that the BLM authorized some maintenance work to be performed to a "1/4 to 1/2 mile-long portion" of the Copper Globe Road, a portion which connects County Road 927 and the BLM System Road. *Id*. Nothing in the emails suggests any intent by the BLM to surrender title to Copper Globe Road to the County.

To be sure, the emails do quite the opposite by expressly distinguishing between the BLM and county portions of the road and unequivocally establishing that the BLM regards the bladed portion of the road as a "BLM road." *See id*. ("As a courtesy, Emery County has cleared 1/4 to 1/2 mile-long portion of the BLM road to facilitate access through a difficult area from the BLM road onto the county road."); *id*. ("BLM asked Emery County to blade this portion of the road to allow its use by BLM."); *id*. ("The portion of BLM road that was bladed lies within a 30-foot wide area which is maintained by Emery County on an annual basis at the same time they are maintaining the county road."). Thus, if anything, these emails establish the BLM"s intent to

continue to assert ownership of the portion of the Copper Globe Road that is disputed in this action, thereby, rebutting SUWA's claims of inadequate representation.

**c. Non-Binding Determination Process**

Also while this litigation was pending, BLM staff proposed that the agency engage in an administrative process of making non-binding determinations ("NBD") with regard to the validity of hundreds of alleged R.S. 2477 rights-of-way on BLM land throughout the State of Utah. This proposed NBD process is for the purpose of allowing the BLM to more quickly determine which R.S. 2477 rights-of-way should be recognized for purposes of its land use planning and management, without having to engage in formal QTA proceedings as to all the hundreds of rights-of-way claimed. SUWA argues that the result of these NBDs will be for the BLM to effectively recognize the State's alleged R.S. 2477 rights-of-way without subjecting the State's evidence of historical use to the much higher standard of proof required by the federal courts. SUWA's Memo in Support, pp. 22-23, Dkt. No. 37. In other words, the NBD process, SUWA claims, could grant the State of Utah every management prerogative it would get if it won a QTA, but without complying with the QTA's rigorous requirements. *Id*. at 23. This, SUWA argues, is additional evidence that the United States is not committed to vigorously defending its title to the roads at issue and thus does not adequately represent SUWA's interest. *Id*. at 24.

In making this claim, however, SUWA misconstrues the nature and purpose of the NBD process. The commencement of the NBD process with respect to any route in no way suggests that the BLM is predisposed to recognize the validity of the asserted R.S. 2477 right-of-way, much less that the BLM will eventually issue a NBD surrendering some management control

over the claimed route. Rather, the BLM uses the process as a matter of administrative convenience to obtain information concerning a right-of-way claimed under R.S. 2477, both from those supporting and those opposing the application.

Once the BLM makes a NBD concerning a claimed route, by definition, this determination does not have the final effect of a QTA decree. The BLM does not convey any title interests, and it can revisit the determination at any time. Thus, the NBD process is completely separate from a QTA, and the commencement of the process does nothing to suggest that the United States has somehow bound itself to provide a less than vigorous defense of its title interests in this or any other action.

Furthermore, SUWA has provided the court with no evidence that the BLM is seeking to utilize the NBD process with respect to the roads at issue in this case.[11] Even were the BLM to apply the NBD process to the present routes, however, the Court is unable to see how such a determination by the BLM could affect this QTA. As already stated, whether an R.S. 2477 right-of-way exists depends entirely on the historical evidence. And a NBD made by the BLM in 2008 cannot change facts that occurred prior to 1976.

The present action before the court is not a land management case, but a QTA, with the only issue being who owns title to seven roads located on BLM land in Emery County. The United States is pursuing a "single litigation objective – namely, defending exclusive title to [these seven roads]", *San Juan County*, 503 F.3d at 1206 – and therefore, holds a presumption of

---

[11]Although SUWA has provided the court with emails from the BLM listing claimed R.S. 2477 rights-of-way throughout the State that may be subject to NBDs, the reference in these emails to the roads at issue in this case simply list them as "claimed R.S. 2477 right-of-way claims currently under Quiet Title Act litigation." SUWA Memo in Support, Exh. 23, Dkt. No. 37. There is no indication that the BLM intends to subject these routes to the NBD process.

adequate representation. *See Coalition of Counties*, 100 F.3d 837, 845 (10th Cir. 1996) ("representation is adequate 'when the objective of the applicant for intervention is identical to that of one of the parties.'") (quoting *City of Stilwell, Okl. v. Ozarks Rural Elec. Coop, Corp.*, 79 F.3d 1038, 1042 (10th Cir. 1996)). Because SUWA has failed to overcome this presumption, the court finds that the United States adequately represents SUWA's interests and SUWA's application to intervene as a matter of right is DENIED.[12]

**B. Permissive Intervention**

Federal Rule of Civil Procedure 24(b) provides that permissive intervention may be allowed when an applicant "has a claim or defense that shares with the main action a common question of law or fact." At issue in this case, is whether the State of Utah owns title to seven roads located on BLM land in Emery County under R.S. 2477. Resolution of this issue will not involve any "claims" or "defenses" in common with SUWA's asserted conservation interest. Rather, it is limited to the question of title, an issue the court has already found is adequately represented by the United States. Accordingly, because SUWA has not demonstrated that it has any actual "claims" or "defenses" that are related to this title dispute which are not already adequately represented by the United States, it is not a proper party and its application for permissive intervention is DENIED.

---

[12]Although the court would reach this decision based solely on the merits of the case before it, to the extent that *San Juan County* has any precedential value on the ultimate decision in this case, the court reaches the same result. In harmony with nine out of thirteen judges of the Tenth Circuit, which denied intervention under almost identical facts, SUWA's motion for intervention as a matter of right is likewise denied.

**V. CONCLUSION**

Although the court finds that SUWA has a legally protectable interest in the property at issue, it also finds that the United States adequately represents SUWA's interests, making intervention in this case inappropriate. In litigating this dispute, the United States has a single objective – the only objective that can be at issue in a QTA and one that is identical to SUWA's – namely, to defend exclusive title to seven alleged R.S. 2477 rights-of-way located on BLM land in Emery County. *San Juan County*, 503 F.3d at 1206. Accordingly, SUWA's motion to intervene, both as a matter of right and permissively, is DENIED.

IT IS SO ORDERED.

DATED this 8th day of October, 2008.

Dee Benson
United States District Judge