IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| STATE OF UTAH AND EMERY COUNTY,<br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA, DEPARTMENT OF THE INTERIOR, BUREAU OF LAND MANAGEMENT,<br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:05-CV-540<br>Judge Dee Benson |

Before the court is the United States' Motion for Partial Summary Judgment filed on January 21, 2011. (Dkt. No. 66.) The State of Utah and Emery County ("Plaintiffs") opposed the motion on April 18, 2011. (Dkt. No. 76.) The United States replied to the opposition on May 20, 2011. (Dkt. No. 79.) On November 8, 2011, the court granted the Utah Association of Counties' motion to participate as amicus curiae and allowed appropriate briefing. The court heard oral argument on November 17, 2011 and took the matter under advisement.

On December 2, 2011, the court held a status conference where the court granted the United States' motion as to the East Mexican Mountain Road and the West Mexican Mountain Road without prejudice. The court requested further briefing on Sid's Leap Road, Copper Globe

Road, and Seeger's Hole Road. After receiving the supplemental briefing, the court heard oral argument on April 24, 2012 and took the matter under advisement. The court now issues the following Memorandum Decision and Order concerning Sid's Leap Road, Copper Globe Road, and Seeger's Hole Road.

**SID'S LEAP ROAD**

The United States argues that Plaintiffs' claims regarding Sid's Leap Road are barred by the QTA statute of limitations,[1] in part, because the road was closed with signs sometime before June 29, 1993. (United States' Supplmnt. Mem. Supp. Mot. Partial Summ. J. ("Supp. Supplmnt.") at 18.) The court agrees.

The United States' evidence stands uncontroverted. A Bureau of Land Management ("BLM") staff report dated April 30, 1992 contains notes of an Easter Patrol on April 18, 1992. The notes describe the following conversation between two BLM staff representatives, Tom Gnojek and Jaynee Levy, and a large family that was camping in the area:

> [They] were most interested in what areas were open to OHV's. In particular we fielded many questions concerning the recently closed road to [Sid's] Leap. They wished they had been warned earlier that the closure was there, such as a notice before you start down the road off the Jackass Bench Loop road.

(Supp. Supplmnt., Ex.. 37 at SR000449) (emphasis added.)

This staff report corroborates Mr. Gnojek's deposition testimony. "[P]eople had been wandering around there [at the point of beginning of the eastern Sid's Leap Road] so we closed it

[1]Plaintiffs brought the current action on June 29, 2005. The Quiet Title Act, 28 U.S.C. §2409a ("QTA") provides a statute of limitations of 12 years. Thus, the applicable date for purposes of statute of limitations is June 29, 1993.

with additional signs and marked it closed and in the early '90s started more intensely looking at that road to try to maintain the closure that was prescribed by the RMP." (Supp. Supplmnt., Ex. 14 at 37:14-18) (emphasis added.)

The staff report and Mr. Gnojek's deposition testimony stand uncontroverted. Thus, for purposes of this motion, Sid's Leap Road was closed with signs sometime before June 29, 1993. This action was sufficient to constitute notice of the United States' adverse claim. Accordingly, Plaintiffs' claims as to Sid's Leap Road are barred by the QTA statute of limitations.

## COPPER GLOBE ROAD

The United States argues that the QTA statute of limitations was triggered as to Copper Globe Road by the grading and improvement of the road, by the 1971 and 1980 Memorandums of Understanding, and by the 1985 easement which covers portions of the road located on state-owned lands. (Supp. Supplmnt. at 18-23.) The court disagrees.

### I. Road Grading and Improvement

The United States argues the court should grant its motion as to Copper Globe Road because it graded and improved the road "as far back as 1956 or 1957." (Supp. Supplmnt. at 20.) This argument fails for two reasons. First, there is a factual dispute as to how often the road was maintained, graded and/or otherwise improved by the United States. While the United States asserts that it may have conducted such activities since 1956, Plaintiffs assert that such activities were limited to "grading the road a single time in 1992." (Pls. Resp. to Def.'s Supp. Supplmnt. Mot. Partial Summ. J., Dkt No. 98 ("Opp'n Supplmnt.") at 17.) Thus, the issue should be presented to the trier of fact.

Second, the court finds that grading and improving the road are not adverse claims to Plaintiffs' alleged right-of-way. Here, the court finds the Ninth Circuit case McFarland v. Norton persuasive. 425 F.3d 724 (9th Cir. 2005). McFarland involved an easement accessing a private inholding within Glacier National Park. Since at least 1916, year-round residents of the private land had access via a road crossing federal land. During the 1970s, the Park Service began to erect wooden barriers which the landowners moved aside for access. In 1976, the Park Service replaced the barriers with a locked cable which the Park Service unlocked at the request of the landowners. Later, the Park Service installed a double-lock system, but again the landowners were allowed access. In 1999, the Park Service advised plaintiff that the landowners would no longer have access to the road during the winter and changed the lock system to deny access. In 2000, plaintiff sued to quiet title claiming an easement over the road.

In reversing the district court, the Ninth Circuit held that the statute of limitations had not run because McFarland "did not know nor should he have known that the government disputed his claim to an easement" until 1999 when the Park Service refused to open the gate during the winter. Id. at 728. The Ninth Circuit reasoned that "[t]he government, in its capacity as the owner of the servient tenement, has the right to reasonable use of its land . . . . It follows that mild interference with the use of an easement pursuant to the government's own property interests will not start the statute of limitations running . . . ." Id. at 727 (citations omitted). The court held that "[u]nless the installation of gates is coupled with a denial of access, there is no easement infringement." Id.

In the case at bar, the court finds that grading and improving the road is "mild interference" pursuant to the "government's own property interests" and that unless those activities were "coupled with a denial of access" there is no "infringement" on Plaintiffs' right-of-way. Id. Accordingly, the United States' maintenance and improvement activities – even if they went as far back as 1956 – did not trigger the QTA statute of limitations.

**II. 1971 and 1980 MOUs**

The United States also argues that the 1971 and 1980 Memorandums of Understanding ("MOUs") constitute adverse claims of ownership to Copper Globe Road which triggered the QTA statute of limitations. (Supp. Supplmnt. at 18-19.) This argument also fails. The practice of using road maintenance agreements ("RMAs" or "MOUs") predates both the QTA and the repeal of R.S. 2477 by the Federal Land Policy Management Act ("FLPMA"). For years, counties and the BLM have entered into road maintenance agreements to allocate maintenance responsibilities between governments that have intertwined interests.

The 1971 MOU repeatedly expresses the cooperative and mutually beneficial intent of the agreement. "This agreement is a valuable aid in the development of our cooperative relationships with Emery County. It should serve to assist in accomplishing the optimum possible maintenance of our roads of mutual concern." (Mem. Supp. Mot. Leave Participate Amicus Curiae and Br. Amicus Curiae, Dkt. No. 82-1 ("Amicus Brief"), Ex. 7, p. 2.) The BLM expressly noted that it looked forward to "our mutual accomplishment, as funds permit, of road maintenance beneficial to the users of our interconnected road transportation system." Id. at 3.

The reference to funding is significant. At the time Emery County entered into the road maintenance MOUs, state law defined "county roads" as the counties' "class B roads" which were maintained with state funds. Utah Code Ann. § 27-12-22 (1976). However, class D roads are public user roads and, unlike the class B roads, do not have state funds available for their maintenance. Thus, the term "county roads" in the 1971 MOU means class B roads for which Emery County received state maintenance funds. This definition of the term "county roads" continued in subsequent MOUs, including the 1980 MOU, because of principles of contractual construction. See Wills v. Regence BlueCross BlueShield of Utah, 2:07-cv-616, 2008 U.S. Dist. LEXIS 86059, at **15-16 (D. Utah Oct. 23, 2008) (citing Beehive Med. Elecs., Inc. v. Indus. Comm'n, 583 P.2d 53, 60 (Utah 1978). The 1971 and 1980 MOUs simply confirmed the county's maintenance responsibility for "county roads" being class B roads. They did not sign away rights to the public user roads historically maintained by the third-parties who used them.

As acknowledged by the BLM in an August 8, 2008 instruction memorandum regarding road maintenance agreements, "in instances where a governmental entity, such as a state, county, city, or town, and the BLM are interested in preserving the condition of a road without regard to its legal status, the use of a road maintenance agreement (RMA) may be an appropriate means to accomplish this, and . . . the BLM has used RMAs for such purposes for many years." Amicus Brief, Ex. 3. Thus, "RMAs do not make any determination regarding the legal status under R.S. 2477." Id. "An RMA simply allocates responsibility between a county and the BLM for maintaining the status quo of the roads covered by the RMA." Id. Consequently, the court finds that the MOUs did not make ownership claims of the respective roads but allocated maintenance

responsibilities between the counties and the BLM. Accordingly, the court holds that the 1971 and 1980 MOUs do not contain an ownership claim by the BLM of Copper Globe Road.

However, even if the MOUs contained an ownership claim of Copper Globe Road, the court would still find that such a claim would be insufficient to trigger the statute of limitations. As explained above, this court finds McFarland, and cases like it, persuasive. The present case involves rights-of-way; it does not involve fee simple title to property. Where a claimant seeks "fee title [to property], notice of a government claim that created even a cloud on the title may be sufficient to trigger the limitations period." McFarland v. Norton, 425 F.3d 724, 726 (9th Cir. 2005). "An easement, of course, is different." Id. at 726-27. "[W]hen the plaintiff claims a non-possessory interest such as an easement, knowledge of a government claim of ownership may be entirely consistent with a plaintiff's claim." Michel v. United States, 65 F.3d 130, 132 (9th Cir. 1995). Thus, in easement and right-of-way cases, the limitations period is not triggered simply because "the government claims some interest – any interest – in the property." Werner v. United States, 9 F.3d 1514, 1516 (11th Cir. 1993). Rather, when a plaintiff claims a nonpossessory interest, an action accrues "only when the government, adversely to the interests of plaintiff, denies or limits the use of the alleged easement." Michel, 65 F.3d at 132 (citing Werner, 9 F.3d at 1516).

In the case at bar, Plaintiffs allege that they have a right-of-way on Copper Globe Road; they do not allege that they have fee simple title to it. An ownership claim of the road is not adverse to Plaintiffs' alleged right-of-way. Thus, even if the 1971 and 1980 MOUs were claims of ownership of Copper Globe Road, they would not trigger the QTA statute of limitations.

## III. <u>Exclusive Easement</u>

The United States also argues that the QTA statute of limitations was triggered in 1985 when it was given an easement for those portions of Copper Globe Road located on state-owned lands. (Supp. Supplmnt. at 19-20.) This argument also fails. The purpose of the easement granted to the United States is to allow "access for the people of the United States generally to all lands owned, administered, or controlled by the UNITED STATES OF AMERICA . . . ." (Supp. Supplmnt., Ex.. 23.) Furthermore, the State "reserve[d] the right to utilize said easement for ingress and egress and access to and from the lands owned by Grantor on both sides of the easement for all lawful purposes." (Id.) Thus, this easement provides for access not only to the BLM, but also to the State of Utah and to the People of the United States, which includes the same people who had been using the road since at least the 1930s. Furthermore, the easement reverts to the State should it be no longer used for its intended purpose. Thus, the court finds that the easement did not constitute an adverse claim to the alleged R.S. 2477 right-of-way across federal land. Accordingly, the easement did not trigger the QTA statute of limitations.

## IV. <u>1963 Ownership Assertion</u>

To the extent that the United States continues to argue that the 1963 ownership assertion triggered the QTA statute, the court denies the same for the reasons stated above regarding ownership claims of land where a right-of-way is involved.

## SEEGER'S HOLE ROAD

The United States argues that the QTA statute of limitations was triggered as to Seeger's Hole Road by its grading of the road and by the 1971 MOU. (Supp. Supplmnt. at 23.) The court disagrees.

### I. Road Grading

The court denies the United States' motion as to the grading of Seeger's Hole Road for the same reasons it denied the same argument regarding Copper Globe Road above. Road grading is "mild interference" with the use of the right-of-way "pursuant to the government's own property interest" and unless those activities were "coupled with a denial of access" there is no infringement with the right-of-way. McFarland v. Norton, 425 F.3d at 727.

### II. 1971 MOU

The court denies the United States' motion as to the 1971 MOU for the same reasons it denied the same argument regarding Copper Globe Road above. The 1971 MOU does not constitute claim of ownership of the road, and, even if it did, a claim of ownership of the road is not adverse to Plaintiffs' alleged right-of-way interest.

## CONCLUSION

For the reasons stated above, the court GRANTS the United States' motion as to Sid's Leap Road and DENIES it as to Copper Globe Road and Seeger's Hole Road.

DATED this 3rd day of May, 2012.

Dee Benson
United States District Judge